PEOPLE ex rel. NELSON v. MARSH et al.

(Supreme Court, Appellate Division, Second Department.   April 13, 1903.)

1. DRAINAGE ASSESSMENT—MANDAMUS TO COMPEL—LACHES.
    In 1869 proceedings were begun under the drainage act (Laws 1869,
    p. 2223, c. 888) wherein commissioners were appointed in 1870, who in
    1872 issued drainage certificates payable in 1875.   These were after-
    wards exchanged for bonds issued in pursuance of an order made in
    1872.   Work was stopped in 1873, and in 1875 the commissioners author-
    ized proceedings to dissolve the commission.   In that year proceedings
    were begun for the appointment of commissioners to assess compensa-
    tion for lands taken for the drain, which proceedings were terminated
    in 1877.   A bondholder instituted mandamus to compel levy of an as-
    sessment in 1898.   *Held*, that the mandamus proceedings were barred
    by laches.

2. SAME—LIMITATIONS.
    Code Civ. Proc. § 414, provides that the provisions of sections 362–
    415 as to limitations in civil remedies shall apply to a civil action or
    special proceeding.   Section 388 provides that an action, the limitation
    of which is not specially prescribed, may be commenced within 10 years.
    In 1898 plaintiff sought mandamus to compel drainage commissioners
    to levy an assessment and collect so much thereof as should be sufficient
    to pay his drainage bonds, and to take any preliminary proceedings
    necessary thereto.   Drainage Act (Laws 1869, p. 2223, c. 888) § 9, pro-
    vides that any person whose land is taken shall be paid before the com-
    mencement of the work, and, if his compensation cannot be agreed on,
    the commissioners shall condemn the property as provided by the rail-
    road law (Laws 1850, p. 211, c. 140).   The railroad law requires an ap-
    pointment of commissioners of appraisal, and the payment of compen-
    sation before the railroad company is entitled to take the property.   It
    appeared that work on the drains was ceased in 1873, but in 1875 the
    commissioners instituted condemnation proceedings, which were termi-
    nated in 1877.   *Held*, that the mandamus proceedings were barred.
        Hirschberg, J., dissenting.

Appeal from Trial Term, Richmond County.

Mandamus by the people of the state of New York, on the rela-
tion of William Nelson, against Isaac M. Marsh and others, drain-
age commissioners, and others.   From a final order, after a directed
verdict, refusing a peremptory writ and dismissing the proceedings
on the merits, and from the order directing the verdict and another
denying a motion for a new trial, relator appeals.   Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOOD-
WARD, and HIRSCHBERG, JJ.

John R. Dos Passos (John Murray Mitchell and Samuel W. Bower,
on the brief), for appellant.

Wm. A. Shortt (A. D. Greenfield, on the brief), for respondent
Commissioners.

Geo. J. Greenfield (Geo. L. Rives and Geo. L. Sterling, on the
brief), for respondent city of New York.

W. W. MacFarland, for respondents.

GOODRICH, P. J.   In June, 1898, the relator obtained an order
directing the issuance of an alternative writ of mandamus command-
ing the individual defendants who had been appointed commissioners
under chapter 888, p. 2223, of the Laws of 1869, vol. 2, commonly

known as the "Drainage Act," and also the city of New York, as successor of the town of Southfield, Richmond county, and the supervisors of said county, to levy the assessment provided for in said act and the acts amendatory thereof, and to proceed to collect so much of such assessment as should be necessary to pay certain certificates or evidences of indebtedness and interest thereon, the principal being $4,000 and the interest $8,106, such certificates having been issued by the said commissioners under the order of the county court of Richmond county in July, 1872, for money borrowed by them to carry on certain drainage improvements in the town of Southfield, and requiring the commissioners, if any preliminary acts or proceedings were necessary toward the payment of said certificates, to take such acts.

The city and the commissioners filed separate returns to the writ, in which, among other defenses, they set up the following:

"That the alleged cause of action of the relator, plaintiff herein, and of his vendors and prior owners and holders of the said bonds, set forth in said alternative writ, and their right to the relief herein demanded, and to enforce the remedy herein sought by the said writ of alternative mandamus, accrued more than six years, more than ten years, and more than twenty years before the commencement of this proceeding; that during all that time they have taken no steps or proceedings to prosecute or enforce their said rights or remedies, but have been guilty of gross negligence and laches in the same, and are now barred therefrom under the statute of limitations, and by equitable rules applicable to the same."

The issues came on to be tried at Richmond Trial Term, Mr. Justice Keogh presiding. At the close of the relator's evidence, the defendants moved for the direction of a verdict in their favor. The relator moved for permission to go to the jury on various questions of fact, but the court denied the motion, and directed a verdict for the defendants, and the relator excepted. The verdict was entered, and the relator moved for a new trial on the minutes and to set aside the verdict. This motion was denied, and the relator excepted. From the judgment and orders appeal comes to this court.

While the record is voluminous, and the briefs elaborate, the facts may be stated very concisely. In August, 1869, certain residents of Richmond county presented to the county judge of that county a petition for the appointment of commissioners under the drainage act, and the county judge appointed Messrs. Barton, Root, and McLean as commissioners to determine whether, in order to drain certain land, described in the petition, it was necessary that a ditch or drain for the passage of water should be opened through adjacent lands, and whether it was necessary for the public health that the land named in the petition should be drained. The commissioners met, and, after viewing the lands, reported in favor of draining the same, and of the necessity of opening ditches on adjacent lands. This report was dated and filed in June, 1870. In May, 1871, the commissioners resolved that additional lands ought to be included in the drainage district, and in September, 1871, application was made to the county court for such inclusion, and the court appointed the same commissioners as before. Meantime, in July, 1871, the commissioners applied to the county court for permission, and were au-

thorized, to borrow $20,000 to carry on the work, and to issue certificates or "evidences of indebtedness" in a form set out in the order, in which the precise date of maturity was left blank. The certificates, however, which were dated June 29, 1872, contained a clause making them payable July 1, 1875, or sooner, upon the completion and collection of the assessment as provided in the drainage act. Four of these certificates, each for $1,000, which were in manuscript, were issued, and came into the hands of the relator for value. They were afterward exchanged for bonds which were issued in pursuance of an order of the county judge made in June, 1872, authorizing the commissioners to borrow $40,000, and issue bonds therefor. It may also be noticed that under several orders made by the county judge the commissioners were authorized to borrow in all about $165,000, so that the amount involved in this litigation amounts, with interest, to about half a million of dollars. The bonds were, by their terms, payable on July 1, 1878, "or sooner, upon the completion and assessment for the drainage aforesaid, and the collection thereof, with interest at the rate of seven per cent." Since that time the defendants Marsh and Christopher have been appointed commissioners in place of Barton and McLean. In June, 1872, the two proceedings were consolidated by order of the county court.

At the threshold of our examination, we are confronted with two questions—laches and limitations. As to laches, it appears, and the relator's counsel says in his brief, that the work of drainage was "practically completed" before the commencement of the proceeding in Matter of Marsh, 71 N. Y. 315, which was begun on June 10, 1875. See 10 Hun, at page 50. Defendants' counsel says in his brief that the commissioners stopped work in 1873, and such is the evidence also. The Court of Appeals decided the Marsh Case, supra, in November, 1877. After 1873 nothing appears to have been done in regard to making the drains or taking proceedings for the levying of any assessment to pay the bonds, and the commissioners, on May 23, 1875, passed a resolution instructing counsel to take proceedings for "dissolving this commission." Meanwhile the drains were falling into decay, and, being stopped up, were flooding the lands in various places. The validity of the bonds and the legality of their issue had been already determined in a proceeding for and the granting of an alternative writ of mandamus issued out of the Supreme Court in March, 1873, by which the commissioners were ordered to issue the bonds, or show cause to the contrary. In April the court issued a peremptory writ ordering the commissioners to issue the bonds, and they filed their return to the writ, showing that in compliance with the writ they had issued them. Meanwhile the ownership of some of the lands has changed. The United States government has acquired title to other parts of them, and the situation of parties interested has thus materially altered; yet during the 23 years which followed the abandonment of the enterprise the relator has slept upon his rights, and only begun this proceeding on June 28, 1898. Even if he was lulled into inaction by the proceedings under review in Matter of Marsh, supra, that proceeding was terminated in November, 1877. A more palpable case of laches can hardly be stated,

and the court would have been justified in dismissing the writ as matter of discretion. It appears, however, that the court directed the judgment on the merits, so that it becomes unnecessary to consider whether or not there was a fair exercise of discretion.

The statute of limitations is a bar to the relator's right to mandamus. Section 414 of the Code of Civil Procedure applies the provisions of chapter 4, entitled "Limitation of the Time of Enforcing a Civil Remedy" (sections 362 to 415), "to a civil action or special proceeding." It was held, in People ex rel. Sheridan v. French, 13 Abb. N. C. 413, affirmed without opinion 119 N. Y. 630, 23 N. E. 1145, that a proceeding by mandamus to compel the payment of the relator's salary is a special proceeding within section 414, and that the proceeding is barred unless commenced within the same period of time that an action might have been commenced for the same demand. The court also held that a proceeding delayed beyond the statutory limit indicated laches requiring the dismissal of the writ. If, then, the relator's right to institute the present proceeding accrued before the period prescribed by the statute, he is barred thereby. I do not find that the relator's cause of action is specifically prescribed in sections 381 to 387, and section 388 provides that "an action the limitation of which is not specifically prescribed * * * must be commenced within ten years after the cause of action accrues." What, then, is the cause of action which this proceeding is brought to enforce? Certainly, it is not a cause of action against any of the defendants to recover the amount of the bonds, and it is not an action or proceeding upon a sealed instrument, in which case the limitation is for 20 years. It is not claimed to be other than the right stated in the alternative writ, which commanded the commissioners to "levy the assessment provided for" by the drainage act, and "to collect so much thereof as shall be sufficient to pay the several evidences of indebtedness" in question, "and, if any acts, steps, proceedings, or resolutions are necessary preliminary to such assessment, that you perform such acts, take such steps and proceedings, and make such resolutions, and do and perform everything necessary towards the payment of and to pay the demand due petitioner," and the city and the supervisors of Richmond county to "take such proper steps and make such resolutions as may be proper and in conformity to law to cause the said amount due on said evidence of indebtedness to be paid to said William Nelson forthwith." This can mean only that the commissioners were required to take steps to levy and collect the assessment for damages, and this is the cause of action stated in the petition by the relator.

The drainage act (section 9) provides that any person whose land is taken in the construction of the ditch shall be paid by the commissioners, before the commencement of the work, the value of the land so taken, and such other injuries as the party may sustain, and, if the commissioners and the owners cannot agree upon the compensation and damages, the commissioners shall proceed to acquire title to the said easement upon and across the land in the manner provided by the railroad law (chapter 140, p. 211, Laws 1850). Turning to that act, we find that it provides for the appointment of com-

missioners of appraisal, the proceedings before them, and the making, filing, and confirmation of their report, the payment or deposit by the commissioners of the sums to be paid to owners as compensation, and thereupon only is the railroad company "entitled to enter upon, take possession of, and use the lands." Applying these provisions to the present proceeding, we find from the evidence that the entire work was completed, or about completed, in 1873, when the commissioners "stopped work" on account of "legal troubles." In June, 1875, however, they presented the petition in the Marsh Case, 10 Hun, 49, in which it was stated that it had become necessary to lay drains and channels over the lands of various persons, and to obtain easements therefor, and asking the appointment of commissioners to ascertain and appraise the compensation to be made to such owners. It was not, however, till June, 1876, that the order was made appointing appraisers to ascertain and appraise the compensation to be made to the landowners. An appeal was taken to the Court of Appeals, which reversed the order (Matter of Marsh, 71 N. Y. 315) on the ground that the petition did not state facts sufficient to confer jurisdiction upon the court to make the order. This seems to have been the last legal proceeding towards any assessment upon the adjacent lands until the institution of those now under review, which were commenced in June, 1898. Whatever cause of action and right to enforce it the relator has under the circumstances set out in the allegations of the alternative writ, he certainly had more than 10 years prior to this proceeding, and he does not allege any new facts explaining his delay in making this application so as to take the case outside of the statute.

Holding these views both as to laches and limitations, it becomes wholly unnecessary to examine the other questions argued by the counsel for the respective parties.

The judgment and order should be affirmed, with costs. All concur, except HIRSCHBERG, J., who dissents.